UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEVEN HOLMES,

        Plaintiff,                Case No. 5:03-cv-88

v.                                    HON. R. ALLAN EDGAR

WILLIAM OVERTON, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Michael Steven Holmes is presently incarcerated within the Michigan Department of Corrections ("MDOC") and is housed at the West Shoreline Correctional Facility ("MTF"). Plaintiff is represented by counsel and this case is set for jury trial on October 18, 2006. The incidents that form the basis of his complaint involve alleged medical treatment received or denied starting in April of 2000, while Plaintiff was housed at several facilities in the state. Plaintiff sues the remaining defendants, Correctional Medical Services (CMS) and physician Dr. Robert DeMasi.

According to the allegations in the complaint, Plaintiff was treated for a recurrent neuroma in his arm from at least April, 2000, until the present. Plaintiff alleges that he was seen by an orthopedic specialist, who requested a follow-up appointment. A request for follow-up care for Plaintiff was sent to CMS on April 24, 2000. On July 13, 2000, after CMS provided no response, another request was sent. CMS denied the follow-up request on August 8, 2000, referring Plaintiff to the prison physician for reevaluation. Plaintiff was evaluated by the prison physician on August 21, 2000. The physician sent yet another request for orthopedic follow-up. After many

delays, Plaintiff was seen by the orthopedist on March 15, 2001, at which time a recurrent neuroma was removed. During the entire period, Plaintiff experienced pain and burning in his arm.

The orthopedist ordered another orthopedic consultation within 90 days of the surgery to assess the possibility of further treatment. However, Plaintiff alleges that CMS had allowed their contract to expire with Hackley Hospital due to budgetary considerations and failure to pay for prior treatment. On July 30, 2001, another request for follow-up was forwarded to CMS for approval of an orthopedic consultation to assess and diagnose Plaintiff's complaint for severe pain, burning, and stinging throughout the right hand and elbow areas. Plaintiff was not seen until December 14, 2001.

On that date, Dr. Eric Orenstein reported that Plaintiff was "symptomatic from a right ulnar neuropathy with associated possible amputation stump neuroma of the right little finger." He recommended an EMG and nerve conduction studies. Those tests were approved by CMS and conducted on February 27, 2002. Plaintiff then received a follow-up orthopedist appointment with Dr. Orenstein on March 8, 2002. Orenstein planned to schedule a surgery for a right cubital tunnel release, medial epicondylectomy and exploration of the radial digital nerve, and the burying of the sensory neuroma. A request for the surgery was sent to CMS on March 21, 2002. The request was denied by CMS on March 29, 2002, which authorized a course of conservative management only. On April 16, 2002, the prison medical service provider appealed the non-approval. Plaintiff alleges that nurse Lynn O'Connor told him that "Dr. R. DeMasi had locked down on [his] medical treatments" and that she did not care if Plaintiff reported her conversation to the Ombudsman Office, because she was retiring in July and felt that DeMasi was definitely indifferent to Plaintiff's medical care. On April 22, 2002, CMS sent literature to the medical service provider, ostensibly seeking help in localizing the site of the problem.

Plaintiff alleges that he then was improperly transferred to a Detroit region prison. On May 8, 2002, Plaintiff filed a grievance (No. NRF 02.05.0587-12z) for deliberate indifference and inappropriate transfer. On July 3, 2002, Plaintiff was transferred to the Jackson Cooper Street facility (JCS) so that he could attend appointments at Duane L. Waters Hospital (DWH). Plaintiff alleges that due to the unnecessary moving between facilities, his right hand and arm swelled badly and became infected by cellulitis. On July 7, 2002, Plaintiff was seen at the DWH emergency room for evaluation of the pain and swelling. The emergency room physician recommended that Plaintiff promptly be followed up for further surgical intervention by the original orthopedic surgeon. Plaintiff filed grievances, Nos. JCS 02.07.897-24Z and JCS 02.07.942-17I, for inappropriate transfer and medical indifference.

On July 12, 2002, the JCS medical service provider appealed to CMS for reconsideration of the ulnar release surgery. The appeal was approved on July 15, 2002, for an appointment at the DWH specialty clinic with Dr. K.H. Ikram on July 17, 2002. Dr. Ikram agreed with the need for the neuropathic surgery and advised that it should be done as soon as possible by Dr. Orenstein, the original surgeon. On August 21, 2002, CMS approved the cubital tunnel release and medial epicondylectomy, with a consultation prior to surgery. Plaintiff was transferred back to Region II on August 22, 2002, and was seen by Dr. Orenstein on August 23, 2002. Surgery was scheduled for September 19, 2002, but had to be postponed because the doctor could not conduct the surgical procedure while Plaintiff had active inflammation or cellulitis caused by the neuroma. The surgery was finally performed on December 19, 2002. In scheduling the cubital tunnel release and medial epicondylectomy, Dr. Orenstein reserved exploration of the digital nerve to see how Plaintiff responded.

Plaintiff was scheduled for a follow-up visit with Dr. Orenstein on January 3, 2003. Orenstein recommended continued medication and physical therapy. On January 22, 2003, despite the existence of a medical hold, Plaintiff was again transferred, this time from Ionia Temporary Facility to the West Shoreline Correctional Facility (MTF). On January 31, 2003, Plaintiff belatedly began his physical therapy. At a second follow-up visit with Dr. Orenstein, Plaintiff was advised to complete his physical therapy and return in six weeks to discuss the next phase of surgery to bury the neuroma. The MTF medical service provider, Dr. W. Nelson, submitted a request for approval of a follow-up appointment on February 17, 2003. CMS physician Dr. DeMasi denied the authorization on the grounds that Dr. Orenstein's note indicated no further need for services. Dr. Nelson forwarded additional information to Dr. DeMasi in an attempt to obtain approval. On March 27, 2003, DeMasi again denied the follow-up.

During an investigation conducted by the Legislative Corrections Ombudsman's Office, Dr. Nelson reported that he had seen repeated denials by DeMasi and that prior attempts to appeal were fruitless unless joined by the MDOC Administrator L. Dick or MDOC Chief Medical Officer G. Pramstaller. The investigation by the Legislative Corrections Ombudsman's Office is still continuing.

On April 19, 2003, Plaintiff filed three more grievances: MTF 03.05.00334-12F, MTF 03.05.00322-28A, and MTF 03.05.00335-28AB. In those grievances, Plaintiff complained that his pain medications had been stopped, that he continued to be denied follow-up and further surgery, that his inflammation and cellulitis was being ignored, and that he was not being allowed to see a doctor for his problems. Grievance No. MTF 03.05.00334-12F was denied, with the response specifically noting that "[t]he denial of surgery is beyond the scope of the Bureau of Health Care." Plaintiff's other grievances were rejected at Step I as duplicative. When Plaintiff appealed to Step II,

two of the grievances were intercepted and the third was again rejected as duplicative.  Plaintiff was then placed on grievance restriction and his requests for appeal forms to Step III were denied.

Upon initial review of the complaint, the court concluded that Plaintiff showed that he exhausted his grievance remedies and that his claims against defendants CMS and Dr. DeMasi presented at least one non-frivolous claim.  Defendants CMS and Dr. DeMasi filed a motion to dismiss, which was denied on May 18, 2004.  On April 7, 2004, defendant CMS filed a motion to dismiss and defendant Dr. DeMasi filed a motion for summary judgment.  The court denied these motions on August 19, 2004.

Defendant Correctional Medical Services and Dr. DeMasi now move for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed

to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue, once again, that plaintiff's complaint should be dismissed for failure to exhaust grievance remedies. The court has already ruled on two separate occasions that plaintiff exhausted his grievance remedies. In the opinion of the undersigned, this issue should not be revisited.

Dr. DeMasi argues that he did not act with deliberate indifference in this case, but used his best medical judgment when initially denying plaintiff the recommended surgery in favor of a more conservative approach and when denying follow-up orthopedic care after surgery. As recognized by the parties and addressed in earlier opinions on this issue, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). The deliberate indifference standard applies to all claims challenging conditions of confinement, which include claims of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). For a medical claim, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104-05; *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.

Not surprisingly, at this point in the proceedings, defendant Dr. DeMasi has asserted that he used his best medical judgment in rejecting plaintiff's physician's request for approval of surgery. Dr. DeMasi argues that there was only a difference of medical opinion and his conservative approach was appropriate under the circumstances in this case. Plaintiff has presented evidence to show that surgery was his only viable option. Further, plaintiff has presented evidence that a conservative approach, to avoid the risk of surgery, was not a normal course of action for plaintiff's situation. Dr. DeMasi is not an orthopedic surgeon and he ignored the recommendation of plaintiff's treating physician. In the opinion of the undersigned, a question of fact exists whether Dr. DeMasi acted with deliberate indifference when denying and delaying plaintiff's surgery and medical care. Dr. DeMasi further alleges that any delay in treatment caused no harm to plaintiff. However, this assertion oversimplifies plaintiff's condition. Plaintiff alleges that he suffered with pain as a result of the delay and has permanent injuries that could have been avoided if surgery was performed at the time it was first recommended. There are factual issues that remain unresolved in this case.

Defendant CMS claims that it cannot be held liable in a § 1983 action under a theory of respondeat superior. In *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001) the Sixth Circuit held that CMS could not be held vicariously liable for the actions of its agents on a respondeat superior basis. Rather, CMS's liability must be premised on some policy that caused a deprivation of the plaintiff's Eighth Amendment rights. *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). Defendant CMS argues that it should be dismissed from this action because plaintiff cannot set forth a policy or procedure that was used by CMS to deny prisoner's health care. This is another issue that the court has already addressed previously in this case, initially and when plaintiff filed a motion to dismiss. Plaintiff has alleged that CMS denied him medical care solely as a cost saving measure. In defendant's most recent motion, defendant for the first time argues that there is no genuine issue of fact on this issue. Defendant does concede that a policy was in place that provided CMS with economic incentive to deny surgical operations such as plaintiff's. However, defendant argues that it would not make economic sense to deny necessary medical care, because necessary medical care denied in the short term would result in more costly medical care in the future. Defendants should present this argument to the jury during the trial on the merits of this case. However, in the opinion of the undersigned, because plaintiff has shown that there was a policy that gave economic incentive to deny medical care, a question of fact exists in this case whether CMS should be liable.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #109) be denied.

*NOTICE TO PARTIES*: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of

this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

          /s/ Timothy P. Greeley
          TIMOTHY P. GREELEY
          UNITED STATES MAGISTRATE JUDGE

Dated:   September 6, 2006